# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MATTHEW BURGHARDT, as Guardian )    CASE NO. 5:19-cv-325
for MATTHEW B. BURGHARDT, )
                              )
                              )
          PLAINTIFF, )    JUDGE SARA LIOI
                              )
vs. )
                              )    MEMORANDUM OPINION AND
                              )    ORDER
EZEKIEL RYAN, et al., )
                              )
                              )
         DEFENDANTS. )

Before the Court for disposition are the following: (1) plaintiff's objections (Doc. No. 25 ["Obj"]) to the magistrate judge's discovery order (*see* Doc. No. 23 ["Disc. Order"]); (2) defendant Ezekiel Ryan's motion (Doc. No. 28 ["Mot. Amend"]) for leave to amend his answer; and (3) defendants' joint motion (Doc. No. 37 ["Mot. Join"]) for leave to file a cross-claim against non-party State of Ohio, Department of Medicaid.

## I. BACKGROUND

The relevant facts surrounding the underlying litigation were adequately set forth in the magistrate judge's December 17, 2019 discovery order and will not be repeated herein. (*See* Disc. Order at 113-16.) For the purpose of providing context for the pending matters, it is sufficient to note that this civil rights action stems from a February 13, 2018 police shooting involving Matthew B. Burghardt ("Burghardt") and Christian Beard ("Beard"). Defendant Ezekiel Ryan ("Ryan") of the Lakemore Police Department and defendant Kristofer London ("London") of the Springfield Township Police Department fired several shots into a vehicle

containing Burghardt and Beard. The parties dispute the details leading up to the shooting—including the impetus for the shooting and the actions of Burghardt and Beard immediately prior to the shooting (including, but not limited to, Burghardt and Beard's purported involvement in an attempted robbery of a tractor store)—but there is no dispute that Burghardt was shot in the head and arm and, as a result, suffered serious brain injuries leaving him mentally impaired. Burghardt, through his guardian, brought the present action, raising claims for unconstitutional seizure under 42 U.S.C. § 1983, assault and battery, and willful, wanton, and reckless conduct.[1] (*See* Doc. No. 1 (Complaint).)

## II. PLAINTIFF'S OBJECTIONS

### A.    The Discovery Dispute and the Magistrate Judge's Order

During the course of discovery, a dispute arose over the discoverability of the contents of Burghardt's cell phone, which was secured at the scene by the Lakemore Police Department. Ryan sought to have an independent forensic expert conduct a non-destructive inspection and capture a copy of the phone's contents, including any information relating to Burghardt's relationship with Beard, their locations before the shooting, and any correspondence leading to the events of February 13, 2018. Plaintiff resisted the motion, suggesting that the requested information was not relevant and was disproportional to the needs of the case.

The magistrate judge granted Ryan's motion to compel, finding that the contents of the cell phone "may be relevant to one or more of [d]efendant Ryan's defenses, particularly in

---

[1] Beard brought a separate action, Case No. 5:19-cv-2788, which has been consolidated with the present action. (*See* Minutes 12-23-2019.)

response to [p]laintiff's state law tort claims." (Disc. Order at 117.) With respect to proportionality, the magistrate judge rejected plaintiff's argument that Ryan already had access to the information he seeks because the shooting was purportedly captured on a police body camera, finding plaintiff's contention an improper basis for completely prohibiting discovery. Additionally, the magistrate judge noted that certain information, including Beard's and Burghardt's use of narcotics and their physical or mental capacity leading up to the incident, would not be evident from a police body camera recording. (*Id.* at 117–18.) Moreover, given Burghardt's current incapacity, the magistrate judge reasoned that Burghardt's cell phone may be the only window into his mental state leading up to the shooting. (*Id.* at 118.)

Nevertheless, the magistrate judge also acknowledged the special privacy concerns associated with an individual's cell phone, relating to the fact that sensitive, personal information is often stored therein. (*Id.*) In recognition of these concerns, the magistrate judge restricted Ryan's discovery of the contents of the cell phone to a period of three (3) months prior to and including the date of the shooting. (*Id.* at 119.) The magistrate judge further directed the parties to confer as to a confidentiality agreement and as to a protocol for the examination and/or copying of the contents of the cell phone. (*Id.*) Additionally, the magistrate judge granted Ryan's request for a protective order requiring the Lakemore Police Department to preserve and maintain Burghardt's cell phone until the forensic examination has been completed. (*Id.* at 119–20.)

### B.    Standard of Review

Plaintiff has filed objections to the discovery order suggesting that, upon a *de novo* review of the order, the Court should deny Ryan's motion for a protective order and for an order

compelling the examination of Burghardt's phone. (Obj. at 135–36, 139–40.) At the outset, the

Court observes that plaintiff has attempted to invoke the wrong standard of review. In *United*

*States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001), the Sixth Circuit explained:

> [28 U.S.C.] § 636(b) creates two different standards of review for district courts
> when a magistrate court's finding is challenged in district court. A district court
> shall apply a 'clearly erroneous or contrary to law' standard of review for the
> 'nondispositive, preliminary measures of § 636(b)(1)(A).' *United States v.*
> *Raddatz*, 447 U.S. 667, 673, 100 S. Ct. 2406, 65 L. Ed. 424 (1980). Conversely,
> 'dispositive motions' excepted from § 636(b)(1)(A), such as motions for summary
> judgment or for the suppression of evidence, are governed by the de novo
> standard.

*Id.* at 674. The language of Rule 72 of the Federal Rules of Civil Procedure "has implemented

this statutory provision[.]" *Callier v. Gray*, 167 F.3d 977, 980 (6th Cir. 1999) (citations omitted).

The relevant portion of Rule 72 provides in subsection (a) that this Court shall consider

objections to a magistrate judge's order on a nondispositive matter and "modify or set aside any

part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard of review is a limited one. *See Massey v. City of*

*Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted,

pending pretrial matter, the district court has the authority to 'reconsider' the determination, but

under a limited standard of review.") (emphasis omitted) "A finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence is left with the

definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum*

*Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 2d 746 (1948). A court may not overturn a

ruling just because, if it were the original fact-finder, it would have decided the evidence

differently. If there are two plausible views of a matter, then a decision cannot be "clearly

erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 84

L. Ed. 2d 518 (1985).

"In reviewing a magistrate judge's decision to determine whether it is 'contrary to law,' a district court is to apply the same standard the Sixth Circuit employs to review a district court's ruling on an evidentiary question, which is an 'abuse of discretion' standard." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-cv-1195, 2015 WL 7251307, at *1 (N.D. Ohio Nov. 16, 2015); *see Nathan v. Ohio State Univ.*, No. 2:10-cv-872, 2013 WL 139874, at *2 (S.D. Ohio Jan. 10, 2013) ("Because a magistrate judge exercises the discretion of the District Court in the first instance in deciding discovery questions, a magistrate judge's order on discovery should be reviewed by a district judge on objections under Fed. R. Civ. P. 72(a) for 'abuse of discretion.'"). An abuse of discretion occurs when the magistrate judge "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *See Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) (quotation marks and citation omitted). Under this deferential standard, "[t]he party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters." *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005).

### C. Objections

Raising many of the same arguments he raised before the magistrate judge, plaintiff challenges the magistrate judge's determination that the requested discovery is both relevant and proportional under Fed. R. Civ. P. 26(b)(1) (providing, in part, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

5

1.    <u>Relevance</u>

With respect to relevance, plaintiff, once again, argues both that the evidence is not relevant to plaintiff's § 1983 action and/or the reasonableness of Ryan's use of force, and that "[t]he phone contents cannot illuminate [the issues of Burghardt's intent and state of mind] any more clearly than the video of the events leading up to and during this shooting." (Obj. at 136.) But, as the magistrate judge correctly observed, the relevance standard applied to discovery is broader than the standard applied to evidence at trial. (*See* Disc. Order at 117.) *See Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2017 WL 6939338, at *9–10 (W.D. Ky. Feb. 16, 2017) ("the scope of inquiry permitted by Rule 26(b)(1) is significantly broader than that permitted at trial") (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500–01 (6th Cir. 1970) and collecting cases)). It is of no consequence that the evidence may not be admissible as to Ryan's § 1983 claim. Indeed, Rule 26(b)(1) makes clear that "[i]nformation within [the scope of discovery under this rule] need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Applying this broad definition of relevance, the magistrate judge did not abuse his discretion in concluding that the evidence explaining Burghardt's actions and/or his state of mind prior to the shooting could be especially relevant to Ryan's defenses of contributory negligence, comparative negligence, and/or assumption of the risk, as well as the doctrines of bad faith and unclean hands. (Disc. Order at 117.) Plaintiff does not entirely reject such a conclusion, but complains that the magistrate judge *sua sponte* supplied Ryan with the justification for the discovery request. (Obj. at 137.) According to plaintiff, Ryan only advocated for the discovery as relevant to plaintiff's underlying § 1983 claim. (*Id.*) He suggests that Ryan waived the argument

that the information on the cell phone might be relevant to his state law defenses by only discussing it in a perfunctory manner in his briefing. (*Id.*)

Plaintiff's waiver argument is unavailing. Ryan specifically argued before the magistrate judge that evidence contained on the cell phone was the best (and maybe the only) means of determining Burghardt's actions, activities, locations, and communications leading up to the encounter with the police. (Doc. No. 19 (Reply) at 98.) All of these matters would bear upon Ryan's defenses to the state law claims.[2] *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 243 (1978) (Relevance is broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case). Plaintiff's objection as to the magistrate judge's finding of relevance is overruled.

### 2.    Proportionality

Plaintiff renews his argument that the production of the contents of the phone constitutes a "massive invasion of [Burghardt's] privacy[,]" such that no time-period limitation can be considered proportional to the needs in the case. (Obj. at 138.) Assuming that the Court finds the evidence relevant, he also argues that the three-month period outlined in the discovery order "is extraordinarily broad and not at all proportional." (*Id.*) He insists that any discovery of the contents of the cell phone should be limited to the day of the shooting and only as to evidence the magistrate judge observed would be "particularly" relevant—that pertaining to Burghardt's mental state. (*Id.* at 138–39, citing Disc. Order at 118.) He also requests that the Court conduct

---

[2] Moreover, plaintiff's citation to caselaw involving waiver of constitutional arguments not properly raised on appeal fails to support his waiver argument. (*See* Obj. at 137, citing *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004)). In *Cole*, the Sixth Circuit found that a criminal defendant failed to properly support his argument relating to the district court's ability to deviate from the sentencing guidelines in his case. Accordingly, this criminal case, addressing the parameters of appellate review of a sentence, has no bearing on a magistrate judge's broad discretion in handling pretrial civil discovery.

an *in camera* inspection of the phone's content to determine what evidence would fall within the parameters of the magistrate judge's discovery order. (*Id*. at 139.)

The Court cannot find that the magistrate judge abused his broad discretion in restricting the discovery to a time period of three months prior to and including the date of the shooting. While this Court has previously acknowledged the heightened privacy concerns associated with an individual's private cell phone, *see M.J. v. Akron City Sch. Dist. Bd. of Educ.*, No. 5:18-cv-577, 2019 WL 4918683, at *2 (N.D. Ohio Oct. 4, 2019) (citing Fed. R. Civ. P. 34 *Advisory Comm. Notes to 2006 Amendment*), the fact remains that Burghardt may not be able to be deposed on these topics, or otherwise provide competent evidence on the events leading up to the shooting. His cell phone, therefore, may be the only source of insight into his mental state leading up to the shooting and his actions during the encounter with the police. *See* Fed. R. Civ. P. 26(b)(1) (identifying the importance of the requested material and the parties' relative access to relevant information as two of the prudential considerations in determining proportionality). Plaintiff's objection to the magistrate judge's finding of proportionality is overruled.

Nevertheless, the Court agrees with plaintiff that an *in camera* inspection of the phone's content would limit any unnecessary intrusion into Burghardt's personal affairs. Accordingly, the Court will require the Lakemore Police Department to produce the cell phone to Magistrate Judge Carmen E. Henderson for an *in camera* inspection.[3] After the magistrate judge has conducted her inspection, she will release to all counsel any relevant material falling within the designated three month period immediately preceding the shooting. *See, e.g., M.J.*, *supra* at *2

---

[3] Magistrate Judge George J. Limbert, who was originally assigned to this case and issued the discovery order that is the subject of plaintiff's objections, retired on June 30, 2020. Magistrate Judge Henderson, who was installed on July 1, 2020, has assumed Magistrate Judge Limbert's docket.

8

(requiring *in camera* inspection of cell phone contents to be conducted by the magistrate judge).

### III. MOTION TO AMEND ANSWER

Ryan has also sought leave to amend his answer to clarify that he is asserting as affirmative defenses the broad range of "tortious conduct" that may be assigned to a plaintiff under Ohio Rev. Code § 2307.23. (Mot. Amend at 154.) In his answer, Ryan raised numerous affirmative defenses, including contributory negligence, comparative negligence, and/or assumption of the risk. (*See* Doc. No. 7 (Ryan Answer).) Ryan notes that § 2307.23, Ohio's tort-reform statute governing allocation of fault, does not "reference specific doctrines of fault but rather refers broadly to the concept of 'tortious conduct.'" (Mot. Amend at 154.) While Ryan believes that his stated affirmative defenses are sufficient to cover the conduct that occurred on the night of the shooting, Ryan "wishes to amend his answer out of an abundance of caution so as to ensure that he is able to defend himself in this case based on the full range of conduct exhibited by plaintiff and his accomplice that night." (*Id.*) The motion is unopposed.

Rule 15 of the Federal Rules of Civil Procedures governs motions to amend and provides that "[t]he court should freely give leave when justice so requires." *Id*. The decision whether to permit the amendment is committed to the discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 330–32, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) (citation omitted); *Estes v. Ky. Util*., 636 F.2d 1131, 1133 (6th Cir. 1980). The trial court's discretion, however, is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on the merits." *Marks v. Shell Oil Co*., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted).

"Leave to amend may be denied when it would result in undue delay, prejudice to the opposing party, or repeated failure to cure deficiencies in the complaint." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (citing *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Duchon v. Cajon Co*., 791 F.2d 43, 48 (6th Cir. 1986)). When a party has delayed in seeking amendment, the court weighs the cause shown for the delay against the resulting prejudice to the opposing party. *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps*, 30 F.3d at 662–63 (citation omitted). The longer the period of unexplained delay, the less prejudice the adverse party will be required to show to defeat the motion. *Id*. at 662.

The Court finds no evidence of significant prejudice to plaintiff, a likelihood of substantial delay in the proceedings, or a repeated failure to cure deficiencies in the pleadings. Ryan's unopposed motion was filed before the close of discovery and before the expiration of the deadline for amending the pleadings (January 31, 2020). Moreover, given that Ryan's amendment involves alleged conduct that was likely covered by his previously asserted affirmative defenses and was already the subject of discovery, the Court anticipates that the amendment will require no additional discovery. Accordingly, the motion to amend is granted, and Ryan shall have leave until August 5, 2020 to file his amended answer. (*See* Doc. No. 28-1.)

### IV. MOTION TO ADD CROSS-CLAIM AND NEW CROSS-DEFENDANT

Defendants collectively seek leave to file a cross-claim against the State of Ohio, Department of Medicaid ("ODM"). According to defendants, ODM "paid all, or a portion, of [Burghardt's] medical bills and expenses and is the real party at interest for those alleged damages in this case." (Mot. Join at 193.) Defendants further argue that, because ODM "is statutorily subrogated to recover benefits it pays out[,]" it is "a necessary party that must be joined in this case." (*Id.*)

The Court's original Case Management Plan and Trial Order set the date of September 16, 2019 for the amendment of pleadings and parties to this action. (Doc. No. 12.) After the present case was consolidated with Case No. 5:19-cv-2788, the Court amended the deadline to January 31, 2020 to accommodate Beard's later filed action. (Doc. No. 24 (Amended Case Management Plan/Order).) Defendants' untimely motion, filed April 16, 2020, is governed by Fed. R. Civ. P. 16(b). *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (citing *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)). Rule 16(b) directs a district court to set dates and deadlines that limit the time for taking certain actions in the case, including "amend[ing] the pleadings." Fed. R. Civ. P. 16(b)(1), (3)(A). The Sixth Circuit has observed that Rule 16(b) "'ensure[s] that at some point both the parties and the pleadings will be fixed[,]'" and, therefore, to obtain leave beyond the date set by the district court, a party must demonstrate "good cause." *In re Nat'l Prescription Opiate Litig., supra* (quoting *Leary, supra*).

Defendants' motion was filed on April 16, 2020— almost three months after the revised deadline to amend pleadings of January 31, 2020 expired. Under the applicable "good cause" standard, the Court may "grant leave to amend only if [the moving parties] demonstrate[] that

'despite their diligence they could not meet the original deadline.'" *Id.* (quoting *Leary*, 349 F.3d at 907 and collecting cases applying the "good cause" standard).

Defendants have not even attempted to meet this standard. Though they insist that the joinder of ODM makes "perfect sense[,]" they fail to offer any justification for the delay in seeking joinder. (Mot. Join at 197.) Defendants have known since at least November 11, 2019, when plaintiff responded to defendants' written discovery requests and advised that ODM was a payor of Burghardt's medical bills, that ODM had an interest in any proceeds from this litigation. (*See* Doc. No. 38-1 (Plaintiff's Response to Interrogatories) at 211 [providing that Burghardt's prior medical treatment is subject to a lien held by ODM].) Yet, defendants inexplicitly waited nearly five months before seeking to join ODM. Defendants cannot, therefore, demonstrate that "despite their diligence" they were unable to meet the Court's extended deadline, and their request is denied for this reason alone.

Of course, even if the Court were to reach the merits, the motion would still be denied. Rule 19(a) provides for the compulsory joinder of a nonparty in three circumstances: (1) when the absence of the nonparty precludes complete relief among the parties already present; (2) when the nonparty will be unable to protect an interest he has in the litigation; and (3) when the nonparty's interest in, but absence from, the litigation subjects parties already in the action to a substantial risk of multiple obligations. *Klint v. Terrain King Corp.*, 79 F.R.D. 10, 11 (M.D. Pa. 1977); *see Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 43–44 (6th Cir. 2012) (applying three-step process); *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (similar). Defendants also cite Rule 17 as a basis of their motion. "Rule 19[, however,] does not incorporate any of the 'real party in interest' principles of Rule 17[.]" *Klint*, 79 F.R.D. at 11

(citing Fed. R. Civ. P. 17). "[M]erely having an interest" in the action does not require joinder unless one of the three bases for joinder are met. *Id.*

Without ODM, complete relief can still be accorded as between plaintiff and defendants. *See Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent party whose joinder is sought.") (quotation marks and citations omitted). Additionally, the absence of ODM from this action will not endanger its interests in the litigation. As plaintiff notes, his counsel is responsible for ensuring the payment of the ODM's lien from any funds that are dispersed to plaintiff. *See, e.g., United States v. Harris*, No. 5:08CV102, 2009 WL 891931, at *3 (N.D. W.Va. Mar. 26, 2009) (attorney representing a Medicare beneficiary found liable for his failure to repay Medicare's conditional payment to his client). Further, even if there is some possible risk of multiple obligations, courts in the Sixth Circuit have refrained from compelling entities like ODM to join litigation under similar circumstances. *See Ahner v. Smith*, No. 3:17-cv-707, 2019 WL 5684438, at *5 (N.D. Ohio Nov. 1, 2019) (refusing to join Center for Medicare and Medicaid Services (CMS) as a necessary party); *see, e.g., Gobrecht v. McGee*, 249 F.R.D. 262, 263 (N.D. Ohio 2007) (similar).

## V. CONCLUSION

As set forth more fully above, the Court resolves the pending pretrial matters as follows: (1) plaintiff's objections (Doc. No. 25) to the magistrate judge's discovery order (*see* Doc. No. 23) are OVERRULED, except to the extent that the Court directs the magistrate judge to conduct an *in camera* inspection of Burghardt's cell phone for the requisite three-month period identified to determine what information must be disclosed; (2) Ryan's motion to amend his answer (Doc.

No. 28) is GRANTED; and (3) defendants' joint motion to join non-party ODM (Doc. No. 37) as

a cross-claim defendant is DENIED.

**IT IS SO ORDERED**.


Dated: July 29, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

14